EXHIBIT A

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

DATA-COM TELECOMMUNICATIONS, INC.,

          Plaintiff,

-against-

EMPIRE INTERNATIONAL LTD.,

          Defendant.

---

Case No.: 07 CV 3207

**VERIFIED ANSWER
WITH COUNTERCLAIM**

Defendant, Empire International Ltd. ("Empire"), by and through its attorneys, Cole, Schotz, Meisel, Forman & Leonard, P.A., as and for its answer to the verified complaint of Data-Com Telecommunications, Inc. ("Data-Com") herein, alleges as follows:

1.     Empire denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the complaint.

2.     Empire admits the allegations as set forth in paragraph 2 of the complaint.

3.     Empire admits that Exhibit "A" is a copy of an agreement that was entered into between Data-Com and Empire, and refers to said agreement for a true and accurate recitation of its terms.

4.     Empire admits the allegation as set forth in paragraph 4 of the complaint.

5.     Empire admits the allegation as set forth in paragraph 5 of the complaint.

6.     Empire denies the allegation as set forth in paragraph 6 of the complaint.

7.     Empire denies the allegations as set forth in paragraph 7 of the complaint and refers to the agreement for a true and accurate recitation of its terms.

8.     Empire admits that Data-Com, through its attorney, sent a letter dated December 26, 2006, but denies that the letter constitutes a written notice of indebtedness and denies that any debt is owed to Data-Com.

42540/0027-3105410v1

2

9. Empire denies the allegations set forth in paragraph 9 of the complaint, except to admit that said letter was received by Empire.

10. Empire denies the allegations set forth in paragraph 10 of the complaint and refers to the agreement for a true and accurate recitation of its terms.

11. Empire repeats its answers to the prior allegations of the complaint as though set forth at length herein.

12. Empire denies the allegations set forth in paragraph 12 of the complaint.

13. Empire denies the allegations set forth in paragraph 13 of the complaint.

14. Empire repeats its answers to the prior allegations to the complaint as though set forth at length herein.

15. Empire denies the allegations set forth in paragraph 15 of the complaint.

16. Empire denies the allegations set forth in paragraph 16 of the complaint.

17. Empire denies the allegations set forth in paragraph 17 of the complaint.

18. Empire repeats its answers to the prior allegations to the complaint as though set forth at length herein.

19. Empire denies the allegations set forth in paragraph 19 of the complaint.

20. Empire denies the allegations set forth in paragraph 20 of the complaint and refers to the agreement for a true and accurate recitation of its terms.

21. Empire denies the allegations set forth in paragraph 21 of the complaint.

## FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief may be granted and Empire reserves its right to move at or before the time of trial for a dismissal of the complaint.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's action is barred by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's breach of the contract between Data-Com and Empire vitiates any alleged payment obligation to Data-Com.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's action is barred by the doctrine of "unclean hands".

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by virtue of its deceitful and fraudulent conduct.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred due to its breach of the implied covenant of good faith and fair dealing.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiff obtains an award against Defendant, that award is subject to set-off and/or recoupment arising from Defendant's claims against Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate its damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has not obtained personal jurisdiction over the defendant due to improper service.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant incorporates as additional affirmative defenses all claims and causes of action set forth in Defendant's counterclaim.

## COUNTERCLAIM

Defendant/Counterclaimant Empire International ("Empire"), by and through its attorneys, Cole, Schotz, Meisel, Forman & Leonard, P.A., counterclaiming against Plaintiff, Data-Com Telecommunications Inc. ("Data-Com") respectfully states as follow:

## NATURE OF ACTIONS

22. Empire brings causes of action against Data-Com for, breach of contract, theft of proprietary information, conversion and fraud.

## THE PARTIES

23. Empire is a New Jersey Corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Norwood, New Jersey.

24. Empire is one of the largest providers of chauffered transportation services in the world, servicing high-end clientele throughout New York, New Jersey, Atlanta, Los Angeles, San Francisco and Empire also maintains a presence in over 250 cities in Europe, South America, Australia, Africa, Asia and most Middle Eastern countries.

4

25. Based upon plaintiff's complaint, and upon information and belief, Data-Com was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York, and maintaining an office at 75 Broad Street, New York, NY 10004.

## BACKGROUND

26. Empire has a reputation of providing the finest quality in chauffered car service to its clientele.

27. Due to the breadth of Empire's chauffer car service, and the demands of its clientele, Empire requires instant, effective and constant communication among its customer, dispatchers and drivers.

28. In an effort to create an effective communication system, Empire purchased and integrated a number of systems known as the Call Pilot and the Symposium system, as well as a sophisticated telephone system. (herein referred to as the Communication System).

29. The Communication System installed by Empire requires maintenance and software upgrades for proper operation.

30. Empire retained Data-Com to perform routine maintenance of Empire's Communication System. Attached as Exhibit "A" is a true and accurate copy of the first agreement between Data-Com and Empire detailing Data-Com's service and maintenance obligations.

31. During the course of the first agreement, Empire experienced dissatisfaction with Data-Com, its services and some of their technicians. While Empire was not completely satisfied with Data-Com's service and maintenance during this period, Empire was assured by Data-Com that service to Empire would improve and that Data-Com did indeed have qualified technicians who could handle Empire's Communication System.

42540/0027-3105410v1

32. Trusting Data-Com and relying on their representations and promises to provide high quality service, Empire agreed to enter into a subsequent agreement retaining Data-Com to maintain Empire's Communication System for a term of three years. Attached as Exhibit "B" is a true and accurate copy of the subsequent agreement entered into between Empire and Data-Com (hereinafter referred to as the "Agreement").

33. Additionally, a document known as the "Service Plan" was attached as an exhibit to the Agreement. The Service Plan supplements the maintenance obligations Data-Com was to fulfill under the Agreement. Attached as Exhibit "C" is a true and accurate copy of the Service Plan supplementing the maintenance obligations Data-Com was to fulfill under its Agreement with Empire.

34. Data-Com was required by the terms of the following Agreement and the Service Plan to perform a number of activities, including, but not limited to: 1) insuring that qualified technicians were readily available at Empire's facilities to monitor and, if necessary, remedy any issue with Empire's Communication System; 2) preventing and remedying any malfunctions and any system shutdowns known as "crashes" with respect to Empire's Communication System; 3) insuring that software upgrades and patches that were available were added to Empire's Communication System; and 4) maintaining at Empire's premises an adequate number of hardware appliances and devices to support Empire's Communication System.

35. In addition to the above, the specific terms of Data-Com's obligations in the Agreement are listed under paragraph 6, entitled Service Obligations which, among other things, states as follows: *(a) Data-Com shall respond to Telecommunications System failures, either on-site or remotely, during the hours, and in accordance with the terms and conditions specified in this Agreement and the Service Plan attached hereto...(b) Maintenance service for hardware*

*shall consist of furnishing all parts and labor necessary to maintain the Systems in good operating condition as a result of Customer's normal use. Repair and replacement parts may be new or like new. Maintenance service for software will include provision of all maintenance releases and patches, which are necessary to correct problems, which Customer has encountered in the performance of the software.*

36. The terms of the Service Plan required Data-Com to dispatch a technician to Empire's facilities within two hours of Empire's request for service, without regard to the time of day or day of the week, and required Data-Com to have a technician present at Empire's facility for at least two days a week for four hours on each day to monitor Empire's Communication System.

37. For the reasons set forth below, Empire was forced to terminate Data-Com, as Data-Com failed to fulfill its contractual obligations in accordance with the term of the Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION BASED ON BREACH OF CONTRACT

38. Empire repeats, realleges and reiterates each and every allegation previously set forth with the same force and effect as if more fully set forth herein.

39. Despite the terms of the Agreement and the Service Plan, Data-Com breached the terms of its contractual obligations by failing to have qualified technicians at Empire's facilities who were capable of monitoring Empire's Communication System.

40. As an example, a system crash of the Symposium portion of Empire's Communication System lasted over a full day where a qualified technician with a simple software installation could have resolved the crash within hours. Data-Com rather than sending a qualified technician at the outset of the crash sent a technician who had little or no expertise with the Symposium portion of the Communication System and who could not perform the

7

software installation. It would then take Data-Com over eighteen hours to send the properly qualified technician with the right software to remedy the system crash.

41. When Data-Com's technicians were present they were often found sleeping at their monitoring stations, rather than monitoring or servicing Empire's systems as required by the terms of the Service Plan and the Agreement.

42. When Data-Com's technicians were awake and present at their monitoring stations, Data-Com's technicians performed their duties with gross negligence. For example, and without limitation, Data-Com would routinely ignore alarms or error messages triggered on Empire's system, thus allowing problems to fester and grow rather than correct them as required by the Service Plan and Agreement.

43. Further, Data-Com ignored the terms of the Service Plan. For example, and without limitation, Data-Com technicians would not arrive within two hours as required by the Service Plan, but would arrive more than twelve hours after a system malfunction or crash, often leaving Empire without its systems operating for more than a full day.

44. These crashes were often caused by Data-Com's failure to maintain Empire's Communication System with software upgrades, patches or maintenance releases that were made publicly available (without any added expense) by the manufacturers of Empire's Communication System.

45. Further compounding the problems resulting from the crashes, was Data-Com's inability to maintain an adequate supply of hardware devices and appliances as required by the Agreement. For example, Data-Com would not replace malfunctioning PBX cards within Empire's Communication System with new cards, but instead would swap the malfunctioning card with a properly functioning card found within the system. The Data-Com technician would

8

42540/0027-3105410v1

then subsequently place the malfunctioning card in a different portion of Empire's Communication System which created the illusion that the malfunctioning card had been properly replaced. In actuality, the malfunctioning card had never been removed and as a result additional problems were created within the system.

46. Additionally, Data-Com failed to use the proper cabling with respect to Empire's Communication System. When Empire upgraded its telephone system from a wall mounted Option 11c system to a floor mounted Option 61c system, the back-up recording SCSI cable was not replaced with the correct cable. Instead, Data-Com forced the old cable into a new slot rather than place a new cable as required by the Agreement.

47. As illustrated above, there were numerous breaches of Data-Com's contractual obligations.

48. These breaches have caused severe damage to Empire's Communication System and business, including, but not limited to the following: 1) Empire's back-up data recorder of the Call Pilot portion of the Communication System malfunctioned and all of Empire's back-up tapes were corrupted, 2) Empire's Communication System eventually failed, as Empire did not have a current or workable back up tape to use to restore its system; and 3) Call Pilot system malfunctions and outages were unreasonably long the effects of which were compounded by Empire losing its entire mailbox, greetings, messages and call tree applications.

49. As a result, Empire was forced to completely replace its Communication System at added cost with the retention of a new maintenance contractor. In an effort to keep the Communication System from permanently malfunctioning, the new contractor was forced to perform immediate emergency repairs and upgrades to the Communication System.

50. Data-Com's failure to properly service and maintain Empire's Communication System has resulted in substantial damages, which includes, among other things, Empire being forced to pay additional costs to its new contractor for the emergency repairs to the Communication System and lost days in revenue and productivity due to malfunctions and crashes in the Communication System.

51. Data-Com is the proximate cause of the damages suffered by Empire due to Data-Com's breach, Data-Com is liable to Empire for those damages including but not limited to consequential damages and attorneys fees.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR THEFT OF PROPRIETARY INFORMATION

52. Empire repeats, realleges and reiterates each and every allegation previously set forth with the same force and effect as if more fully set forth herein.

53. Empire's computer, communication and telephone systems require certain proprietary information to operate properly.

54. Data-Com had complete access to Empire's Communication System including areas that contained Empire's proprietary information.

55. Empire's proprietary information includes, but is not limited to, computer and communication codes and equipment.

56. After Data-Com was removed as Empire's maintenance contractor, Empire learned that all of Empire's proprietary information within its Communication System was missing. Also missing was the central processing unit for the Option 11(c) phone system.

57. As an example, all of Empire's proprietary information in the Call Pilot Software and certain hardware key codes were removed from Empire's Data Center by Data-Com technicians.

10

42540/0027-3105410v1

58. Data-Com did not have any implicit or express permission to remove any proprietary information from Empire's Communication System.

59. Immediately after Data-Com's termination, the Call Pilot system malfunctioned and crashed. As a result, Empire suffered lost revenue and productivity as communication between Empire and its chauffeurs was hampered. The Call Pilot system could not be restored as all of the proprietary key codes had been removed by Data-Com.

60. To this day, the software, key codes and main central processing unit have never been returned to this day despite numerous demands made by Empire.

61. As a result, Empire remains at risk of not being able to restore its system should another crash occur.

62. The Call Pilot Software and hardware key codes are Empire's property and Data-Com's removal of them constitutes theft that has damaged Empire in both loss of productivity and revenue.

63. As a result of Data-Com's theft, Data-Com is liable for any and all costs and damages associated with the theft of Empire's proprietary software and hardware key codes.

64. Additionally, Empire demands the return of all proprietary information and equipment that was stolen by Data-Com.

## AS AND FOR A THIRD CAUSE OF ACTION FOR CONVERSION

65. Empire repeats, realleges and reiterates each and every allegation previously set forth with the same force and effect as if more fully set forth herein.

66. Data-Com has intentionally taken Empire's proprietary software, equipment and key codes for its own use and benefit.

67. Empire has been permanently deprived of the use of its own proprietary software, equipment and key codes by Data-Com.

68. Empire has been totally deprived of any use of its own proprietary software, equipment and key codes by Data-Com.

69. As a result, Data-Com is liable for the value of the proprietary software that was improperly converted by Data-Com.

70. Based on Data-Com's actions, Empire has sustained damages in the amount of the value of the proprietary information taken by Data-Com.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR FRAUD

71. Empire repeats, realleges and reiterates each and every allegation previously set forth with the same force and effect as if more fully set forth herein.

72. Data-Com made numerous material misrepresentations that Empire relied upon to its detriment.

73. Data-Com repeatedly advised Empire that it had ample qualified technicians to service Empire's account.

74. Data-Com repeatedly advised Empire that it had hardware and devices necessary to service Empire's account.

75. Data-Com repeatedly advised Empire that it would be available to remedy any service issue with Empire's Communication System within two hours of any notification by Empire.

76. Data-Com repeatedly advised Empire that it would have qualified technicians who were present at Empire's facility for at least two days a week for a period of four hours a day to monitor and remedy and any malfunctions or crashes with Empire's Communication System.

77. Data-Com repeatedly advised Empire that it was using new equipment to replace malfunctioning parts.

78. Data-Com repeatedly advised Empire that they were using their best efforts in monitoring and servicing Empire's systems and that Empire did not need to contract with other maintenance contractors.

79. As illustrated above, Data-Com's assertions were material misrepresentations of fact.

80. Data-Com made these misrepresentations with the intent to defraud Empire.

81. Empire detrimentally relied upon these misrepresentations as it believed Data-Com was properly maintaining Empire's Communication System and, therefore, Empire did not seek out and obtain other contractors who could properly service Empire's Communication System.

82. As a result of Empire's reliance, it was unable to mitigate the damage suffered at the hands of Data-Com's fraud, breach of contractual obligations, negligence, theft of proprietary information and gross-negligence.

83. The inability to mitigate the damages suffered sooner have resulted in additional costs in repairing and replacing Empire's Communication System.

84. Additionally, as a result of Empire's reliance on Data-Com's misrepresentations, Empire has lost revenue, lost goodwill and lost customers had it not been for the numerous interruptions in service which were allowed to continue because of Data-Com's repeated assurances that it was capable of servicing Empire's Communication System.

85. Based on the fraudulent assertions made by Data-Com and Empire's reliance on these assertions, Empire has suffered monetary damages, of which Data-Com is the proximate cause.

**WHEREFORE**, defendant EMPIRE INTERNATIONAL LTD. seeks a judgment dismissing plaintiff's DATA-COM TELECOMMUNICATIONS INC. complaint with prejudice; and a judgment on its counterclaims against DATA-COM TELECOMMUNICATIONS INC., in the amount of $2,000,000 together with the related costs, disbursements and attorneys' fees in connection with this action and such other further and different relief as this court may find just and equitable.

DATED:   New York, New York
            May 10, 2007

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation
Attorneys for Defendants
EMPIRE INTERNATIONAL LTD.

By: _____
STEVE M.S. MADRA
900 Third Avenue, 16th floor
New York, NY 10022-4728
(212) 752-8000

To:
Brian K. Condon, Esq.
CONDON RESNICK LLP
Attorneys for Plaintiff
96 South Broadway
Nyack, NY 10960
(845) 358-8900

14

42540/0027-3105410v1